1. Spreading Equality Good afternoon ladies and gentlemen. We are here for the InBank Rehearing and Estrada Espinoza v. McCasey. We have Judge Gould participating by video. How are you, Judge Gould? I'm fine, thank you. Okay, counsel, ready? You may proceed. Saad Ahmed for Juan Elias Estrada Espinoza, Your Honors. Your Honors, the main issue in this case is what standard of review shall we use in this case to determine whether the offense constitutes an aggravated felony? And the answer to this question is a de novo standard of review, whether we apply this in a civil context or in a federal sentencing context. The United States Supreme Court in Leopold v. Ashcroft stated that a statute such as an aggravated felony that has both civil and criminal applications must be applied harmoniously. The term aggravated felony appears both in immigration context as well as in federal sentencing context, and it should be applied in the same manner. Your Honor, de novo review is appropriate in this case to determine whether Petitioner's sexual abuse of, excuse me, statutory rape offense under California law is an aggravated felony. And the reason for that is that this is basically an application of the Taylor test that the Supreme Court gave. Under the Taylor test, what the court does, it determines whether a state offense satisfies the generic definition of the crime, or it's satisfied in this case the ordinary contemporary and the common meaning of the term sexual abuse of a minor. Counsel, I'm having a real hard time with this case because I think it ought not to be counted as sexual abuse of a minor, but I don't see a logical way to read it not to be considering the deference we have to give. Let me lay it out, and then you show me why I'm wrong, because I'd love to be shown wrong. It looks to me like we have to defer to the agency's interpretation of its statute under Chevron and a giddy giddy. The statute says murder, rape, or sexual abuse of a minor. California makes the person a minor if they're under 18, and there's no question that sex is sexual. As for whether it's abuse or not, contemporary mores would be that it's not abusive at all. She's above the age at which people typically have sexual relations, and the fact that they're living with her own parents who are perfectly happy with the arrangement indicates that to them it's not abusive. To lots of people it's not abusive, but to the California legislature it's abusive. And it seems like they win on that. So I don't see a logical way around treating it as sexual abuse of a minor. California says if there's more than three years of age difference and the person's a minor, basically it's that rape. Your Honor, to answer the first part of your question, deference is not owed to the BIA because the term sexual abuse of a minor is not an ambiguous term, first of all. Chevron deference only applies where the statute is ambiguous, and then we have to go to the second prong of the Chevron test to find out whether the BIA's interpretation is reasonable. Your Honor, but in this case it's a legal issue. Sexual abuse of a minor, it's not something that appears only in the Immigration and Nationality Act. I believe the court since 1986 has dealt with this sexual abuse of a minor in federal cases. So, Your Honor, this is not a term that cannot be defined by using tools of statutory interpretations. So would you concede then that the word abuse within the meaning of the Immigration and Naturalization Act is ambiguous, and so therefore we do have to apply these statutory tools of interpretation? Your Honor, first of all, as I said earlier, they should not be given any deference to the BIA. But before we get to the question of deference, don't we have to ask whether the statute is ambiguous, and so isn't your position that the word abuse is an ambiguous term? No, Your Honor, I'm saying that sexual abuse of a minor is not an ambiguous term. It's a clear term. So abuse in your definition has to be forcible because the legislature in California didn't seem to be influenced by that. It decided that this was a crime, even though it might encompass facts just like the ones that are bothering Judge Kleinfeld. Your Honor, the California legislature did not say that this offense is abuse, and California in enacting this statute did not say that they were enacting this statute to save minors from abuse. In fact, the purpose behind this statute was to protect teenage pregnancy or curb teenage pregnancies. So even the California law did not, even the California law, the main reason behind why they passed this law was not to protect minors. So the main reason for this was to curb teenage pregnancies, as I indicated before. So therefore, Your Honor, this is not a crime that cannot be generically defined by using the ordinary contemporary and the common meaning of the term. And therefore, there should not be any deference owed to the BIA at all. This crime is not any different from the definition of theft or the definition of forgery, the definition of rape or murder, for which the court uses the generic definitions. So would it make a difference under your interpretation if the victim was 12 years old and the assailant was more than three years older than the victim? That would not be abuse within the meaning of the immigration law? No, Your Honor. As Judge Thomas indicated in his opinion, sexual contact with someone who is under the age of 15 may constitute abuse, even if it's voluntary, because a child under the age of 16 may not realize the repercussions of that contact. It may be emotionally or psychologically harmful. But such conduct may not be psychologically or emotionally harmful to someone over the age of 16. But didn't the California legislature draw the line at 18? It hasn't followed the 16-year bar, has it? No, Your Honor. Your Honor, there is a separate statute for that under 261.5d. And as this court has already determined that in Lopez-Feliz, which is a federal sentencing case, that a crime such as the California Penal Code 261.5 at issue is not categorically a crime of sexual abuse of a minor. Suppose the California statute were identical to the federal crime of sexual abuse of a minor. Yes. In that event, would a conviction in California be sexual abuse for immigration purposes? Your Honor, no, it would not be, because I think in defining the term sexual abuse of a minor, the course could utilize the same standard it is utilizing in federal sentencing cases. Look at the term abuse in the dictionary and then apply the facts of the case to it. There is, and I believe that's the right standard because it takes the abuse, I mean, the term abuse into account, which the BIA's definition in matter of Rodriguez, Rodriguez does not. You know, in this case, the California offense is overbroad. Technically, a college student, 20 years old, can have sex with a 17-year-old girl who's a freshman in college and can be found guilty of violating California law and be subject to deportation. No, it's more than that. He is charged with four counts. One involves any act of copulation, oral copulation with anyone under the age of 18. That would include two 17-year-olds under the California statute who engaged in such an act. Both would be guilty under the California statute with which he was charged, one of the four. In any of those four statutes, does California say it's sexual abuse? No, Your Honor. I believe there has to be a three-year age difference. Well, that's in the first statute of the four counts that he has. Yes. Requires a three-year difference. Yes, Your Honor, in the second. The others where they say oral copulation, for instance, says anyone engaging in oral copulation. That's correct, Your Honor. Meaning two 17-year-olds would both be guilty of one that he was charged with. That's right, Your Honor. And that's why we believe that the California statute is overbroad. Well, it may not be wise policy, but it doesn't ever say that that constitutes sexual abuse. Your Honor, it does not constitute sexual abuse because the way the BIA is interpreting the term sexual abuse in this case and the way the Offredi Court interpreted it makes the statute superfluous because it takes the term abuse out of the statute. One of the canons of statutory's interpretations is that every word in a statute should be given its meaning in the statute. Every phrase. Why wouldn't you determine what abuse is? One way you could do it is by asking yourself, what do I feel is abusive? Another way you could do it is by saying, what does the California legislature think is abusive? Yes. The latter seems more satisfactory. Well, Your Honor, that's not what the California lawmakers intended when they passed this statute. The purpose, as I indicated earlier, in passing the statute was to protect teenage girls from pregnancies. It was not to protect children from minors. So therefore, Your Honor, even under California law, the conduct under the statute is not abusive. And that's what the Court in Lopez-Solis found. And therefore, we find that because the statute is overbroad, it's not categorically a crime of sexual abuse of a minor. Let me ask you about the Federal statute. What's the definition of abuse? Excuse me, Your Honor? I'm sorry. What's the definition of abuse? Your Honor, the definition of abuse that this Court utilized in U.S. v. Lopez-Solis was harm, injure, assault. Something that may harm or injure someone. And there is no studies or there is no evidence that sexual intercourse with somebody who is just shy of her 18th birthday is somehow sexually abusive to that person. Suppose someone is convicted. Suppose someone is convicted of 18 U.S.C. 2243. That's sexual abuse of a minor under Federal law. Would that person qualify under the Immigration Act? Your Honor, that's a difficult question to answer. However, the underlying facts of the offense show that I do know that 2243 was first enacted in 1986. I don't know exact specifics of this law. But I would assume that yes. Isn't it enough that we know that Congress has said this is sexual abuse of a minor? Well, Your Honor, that's not what Congress gave. Congress said that sexual abuse of a minor is an aggravated felony. And it's up to the Court to determine on a case-by-case basis what constitutes sexual abuse of a minor. Even though they've created a crime called sexual abuse of a minor? Yes, Your Honor, because it's just like, as I indicated earlier, theft or forgery or rape. It's up to the Court to decide whether the underlying offense constitutes or qualifies under the generic definition of the crime. In fact, by keeping the statute, you know, by not referencing or cross-referencing a Federal statute, shows that Congress wanted the generic term sexual abuse of a minor, just like it wanted the generic term of theft, generic term of forgery or rape. I can't believe you're telling us that if someone is convicted of sexual abuse of a minor in Federal court, that wouldn't be considered sexual abuse of a minor for immigration purposes. Your Honor, I'm not saying that that would not be sexual abuse of a minor. What I'm saying is that you have to look at whether the Federal definition or the State definition, that's the purpose behind the Taylor analysis, that you don't look at the underlying statute. You look at, you basically harmonize, that's the purpose of Taylor analysis, that you harmonize the statute and you figure out whether the underlying statute satisfies the generic definition. And how do you get the generic definition? By applying the ordinary, contemporary and the common meaning of the term, just like the Court in Lopez-Solis did, on a case-by-case basis. I believe that's the only practical way. How do you decide what is the ordinary, common meaning of the term? Your Honor, that can be decided based on tools of statutory interpretations. I didn't say how. I said who. I believe the Court, we believe the Court should decide. Why not the BIA since, after all, it is the one charged with implementation of the statute? Your Honor, the BIA should not do it because the BIA doesn't have any special expertise in applying the Taylor analysis. That's how you determine the definition of sexual abuse of a minor as a generic crime, is by applying the U.S. Supreme Court's Taylor standard, whether the statute satisfies the generic definition. That's not how you define something. That's how you figure out whether a given statute falls entirely within the definition, but that doesn't produce a definition of anything. And I think Judge Kuczynski's question remains. Who's supposed to come up with the definition in the first place? Your Honor, I believe, as a practical matter, there cannot be one definition of sexual abuse of a minor. It would not be practical. So I believe that the best. Why not? I mean, Lopez-Salas says this is inconsistent with our prior decision because it's different. Yes. In our prior case, we have to give deference to the BIA. What's wrong with that? Well, Your Honor, deference to the BIA is not appropriate because, as I indicated earlier, that the BIA is not an expert in applying the Taylor analysis. That's exactly what the BIA does in interpreting aggregated felonies. That's what the BIA – the BIA is not doing anything that requires an expertise. I'm talking about a merry-go-round here because I just offered up the proposition, I didn't hear any disagreement from you, that the Taylor analysis has nothing to do with coming up with a definition in the first place. Applying the Taylor analysis takes the definition and decides whether a given state statute falls within it. But you still have to come up with a definition in the first place. So the fact that BIA doesn't do Taylor analysis work on a regular basis doesn't say anything at all as to whether they're capable of coming up with a definition in the first place. Your Honor, I believe that the court is capable of coming up with it. But that's not the question. The question is whether the BIA is capable of coming up with it. And I haven't heard anything from you yet that says why it's not. No, Your Honor. BIA is not – BIA cannot come up with a – cannot come up. Why not? Because it will be inconsistent. It will conflict with the circuit court's definition of the term sexual abuse of a minor. In fact, the BIA's definition in matter of Rodriguez-Rodriguez is in conflict with this circuit's definition of sexual abuse of a minor. In fact, the BIA's definition focuses on the intent of the perpetrator, whereas the definition of this court looks at the harm to the person. Just like Judge Reinhardt's opinion in Polaris Galan. In Polaris Galan, the court found that the California statute to annoy and molest a child – a minor, excuse me, was not sexual abuse of a minor because improper – excuse me, it was not a harm. It was not sexual abuse of a minor because there was no indication that the child was harmed. And recently in Rabelas v. Kessler, the court also came up with a decision saying that the Arizona sexual indecency statute was not sexual abuse of a minor because there was no evidence that the child was harmed. Mr. Rahmat, I don't understand why the analysis is any different when the BIA is interpreting an ambiguous term within an immigration statute, whether it be whether the conduct involved a crime involving moral turpitude or was a crime of violence or in this case is an aggravated felony because it constitutes sexual abuse of a minor. Your argument taken to its logical conclusion would eliminate any role for the BIA in determining on a case-by-case basis whether an alien should be denied immigration benefits because of conviction for a certain type of offense. And we know that that isn't what Congress intended because the Supreme Court has told us that it is up to the agency to adjudicate these cases on a case-by-case basis in applying ambiguous statute. Your Honor, the term aggravated felony sexual abuse of a minor has applications in both deportation and federal sentencing. But so do crimes involving moral turpitude, do they not? That's not just – that is not a phrase that is unique to the immigration field. Yeah, that's why the court doesn't give any deference to the BIA in interpreting the crime of moral turpitude. Well, if we did, if we were to decide that we have to give Chevron deference to a CIMT determination, then why shouldn't we give deference to a determination of what sexual abuse of a minor means when the board is interpreting that provision in an immigration statute? Your Honor, first of all, as I indicated earlier, the BIA is going to use the same legal analysis that this court applies, the Taylor analysis, number one. And number two, it will cause disharmony in the application of the same statute. Sexual abuse of a minor aggravated felony applies in both contexts. So there would be one standard for people who are deported and there would be one standard people who are, you know, who are sentenced for illegal reentry. And that's clearly not what Congress wanted. That's clearly not what the Supreme Court in Leocal wanted. In fact, in Leocal, the Supreme Court clearly says that the purpose of, I mean, the purpose of immigration law is uniformity in the application in federal courts as well as in deportation context. It's uniformity throughout the enforcement of the immigration statute. Does the BIA care whether it's uniform with regard to how we as a federal court adjudicating a sentencing issue might interpret the phrase? Your Honor, but that is exactly what the Supreme Court wanted to avoid in Leocal. That's exactly what they wanted to avoid in Lopez v. Gonzalez in interpreting aggravated felony drug convictions. In fact, in both those cases, Supreme Court gave no deference to the BIA. In both those cases, it gave no deference. And the Court here should not give any deference to the BIA in interpreting a term that is not ambiguous. I think it's a plain term. Sexual abuse of a minor can be interpreted, as I indicated earlier, by applying the canons of statutory interpretations, by using a common-sense analysis, by looking at the facts of the, I mean, and the definition of the statute. And so suppose that we don't accept your premise that sexual abuse of a minor is a clear term and conclude that it is ambiguous. Right. Then what role, if any, does the BIA have in determining whether a particular conviction, whether it be under a California statute or any other, constitutes sexual abuse of a minor? Your Honor, if the Court finds that a term is ambiguous, then the Court has to go to the second prong of the Chevron test, which is to determine whether the offense, whether the board's definition is reasonable as applied. And in this case, Your Honor, the board's definition, as applicable to this case, is not reasonable. The BIA said that any sexually explicit contact with someone, with a person under the age of 18 is sexual abuse. In fact, as Judge Kleinfeld just indicated, that's not the case, number one. And number two, that is in conflict with this Court's decision in Lopez-Solis. And there is no evidence offered by the government that is psychologically or emotionally abusive to a minor. And lastly, Your Honor, I would also say that in applying the BIA's decision in this case is in conflict with its own decision in matter of Rodriguez-Rodriguez. Even matter of Rodriguez-Rodriguez did not stand for the proposition that any sexually explicit contact with a person under the age of 18 was abuse. It didn't stand for the proposition. In fact, matter of Rodriguez-Rodriguez had analyzed a number of issues. They looked at the culpable intent of the perpetrator. They looked at the age difference. It looks at a very, very high sentence, 10-year sentence imposed for the crime to find that it was abuse. And, in fact, the BIA's decision in matter of VFD. Well, why not defer to Rodriguez-Rodriguez? I mean, Rodriguez-Rodriguez is a board decision that talks about federal statute. It talks about abuse, including the concept of maltreatment. There's nothing wrong with that, is there? Your Honor. I mean, if you defer to the, if we gave Chevron deference to Rodriguez-Rodriguez, you don't have any objection to that definition, do you? Your Honor, I would have an objection to that definition because it's in conflict with this Court's sentencing cases. It doesn't adopt the federal statute. It says that the, it's a guide in identifying the types of crimes. Yes, it identifies them, yes. It's a guide. It doesn't mean you accept it literally or in every case. Yes, Your Honor. That's correct. However, in this case, Your Honor, the board's definition in Rodriguez-Rodriguez looks at the intent of the person who's doing the offense rather than looking at the harm, looking at the harm to the victim. Well, no, it actually goes on to say abuse is defined in relevant part as a physical or mental maltreatment, right? Right. So it does take into consideration the notion of abuse in a common, common sense way that we would look at it, right? Right, Your Honor. So it says it had to be an illegal act. Yes. And it had, in addition, it had to have some element of maltreatment. Right. So by its sense of it, if we applied Rodriguez-Rodriguez and looked in trying to be consistent with the federal definition, we could say that pure strict liability, you know, statutory rape statutes don't qualify on their own, right? That's correct, Your Honor. So you go to the modified categorical approach. We go to the modified categorical analysis to determine whether the underlying conduct does constitute abuse. Yes, Your Honor. If you follow, if you're taking the Chevron argument and applying it, it doesn't seem to me that Rodriguez-Rodriguez is necessarily in conflict with what you're saying. Yes, Your Honor. It may not be in conflict. But what I'm saying is that giving deference to the BIA, the court can give it Skidmore deference. Maybe look, I mean, the courts can look at the BIA's definition and give it some deference, but not Chevron deference, which would mean to defer to their definition unless it's clearly unreasonable. But the BIA in applying Rodriguez-Rodriguez to the case, I mean, to the instant case. Right. But then in doing that, then they relied on our precedent as well, and we're in control of that. It said look at Barron-Medina and look at Rodriguez-Rodriguez. So they were doing something a little bit different in the instant case than they were doing in Rodriguez-Rodriguez as I read it. Yes, Your Honor. They did not properly apply the standard even in Barron-Medina. You have less than five minutes left. Do you wish to say this, Roboto? Yes, Your Honor, I do. May it please the Court. I'm Jennifer Levings from the Department of Justice, and I'm here on behalf of the Attorney General in this matter. The Board in this case is charged with administering the INA, and relying on its precedential decision in the matter of Rodriguez-Rodriguez, it ruled that Petitioner's offense is qualified as sexually exploitative conduct, which constituted sexual abuse of a minor. In doing so, the Board applied its construction of the undefined statutory term in a permissible way. Because that interpretation is not clearly contrary to the plaining of the statute under the subtle principles of judicial deference set forth in Chevron, the Court should defer to the Board's interpretation. Can we tell whether physical force was involved in the events leading to the conviction? No, Your Honor. Not in this. Don't we have to assume it wasn't? I think you can probably assume that it was not, and it shouldn't be required, because physical force would be something that you would look at in the crime of violence instance. How about harm? I think harm is inherent in, and I believe that the Board's definition actually covers harm that's inherent in the conduct of an adult having sexual intercourse or sexually explicit conduct with a minor. What's the harm? I'm sorry, Your Honor? What's the harm? I remember parents were happy with it. When they had a custody fight, he won. The Department of Protective Services thought he was a nice, stable guy compared to her. Well, this is also all coming from Petitioner. It's not any, you know, his ---- Because I remember it was in the record in this case. But it was disputed by the government. Right. We don't dispute that, but ---- What is the harm? What is abusive? Well, the abusive ---- I mean, I can get to abuse if I do a lot of deferring to the California legislature and the INS, and it may well be, and I'm inclined to think that that's what we have to do, but it would sort of be nice to understand what the abuse is. Well, I think, and the Board looked at this very broadly. They looked at congressional intent, which was to expand the definition of criminals within its expanse. And the harm would be what they looked at was sexually exploitative conduct. And when you exploit a child sexually, that in and of itself is harmful. Answer the question as if we were talking about a 17-year-old girl. Yes, Your Honor. And the harm of having intercourse with a 17-year-old girl? Well, I think even this Court has recognized that there is harm. Even in Lopez-Delis, the Court did recognize that there is physical injury possible. Tell us what the harm was here. Physical injury is possible every time somebody has intercourse or walks out on the street. What harm, my question was, what harm does a 17-year-old girl suffer when she has intercourse? Well, I believe that the Board didn't want to have to get into this with having the Department of Homeland Security have to present actual evidence of harm, which is why it gave a broad definition. However, as this Court has also ---- We're talking about generally a 17-year-old girl. That's what the statute says. 17-year-old girl. But what's this got to do, I mean, this case has got to do with the security of our country? Is that what you're telling me? No, Your Honor. All right. Could you answer the harm to a 17-year-old girl? Well, there's many ---- It doesn't matter who the 17-year-old girl is or who the person who has intercourse with her, except in you've got to be three years older under one section of the statute. But if you have oral copulation or sodomy, then there's no age requirement. It can be a 16-year-old boy who's guilty of that. Well, I believe this ---- What harm is there to the 17-year-old girl? How many 17-year-old girls are being harmed that way these days? Well, if you do want to look at the facts of this case and the harm ---- No, I didn't ask you to look at the facts of this case. Okay, well ---- I'm talking about the statute. The California statute at issue, California chose and they drew a line at age 18 that somebody under 18 is not able to consent. And that was because, and I will say, I don't believe it's correct to say that the only reason this statute was enacted was to prevent teenage pregnancy. Otherwise, it wouldn't cover males. Males don't get pregnant. So, obviously, it's clear that the California legislature was trying to protect a certain class of children, minors, from this type of conduct. When you have an adult ---- From having intercourse with each other. With an adult. Well, the other sections don't require that it be someone 20 years old. Well, I'm talking about the section at issue, the statutory provision. Well, he was charged with all four sections. The opinion deals with one. But he was found guilty of all four, having oral copulation and having a ---- and committing sodomy. Which way, we don't know which way it was. But what is the harm to the 17-year-old girl? In that case, it doesn't matter the age of the male or the other partner. What is the harm for a 17-year-old to have sex? Well, Your Honor, there's many types of harm. Pregnancy, abortion consequences, sexually transmitted diseases can constitute harm. There's mental harm, psychological harm that can result. I mean, who knows what kind of bad relationships she'll continue to form throughout her life. And that goes away, those risks go away at the 18th birthday? No, Your Honor. But, you know, you have to draw a line somewhere. And you find intercourse a very harmful act? I'm sorry, Your Honor. You find intercourse a very harmful act? Depending on the age of the child. And here California and the board have drawn a line at 18. California didn't say it was sexual abuse. No, Your Honor. It's statutory rape in California. But not defined as sexual abuse as some statutes are. Some statutes are. California said it's unlawful for 17-year-olds to engage in certain sexual acts for whatever reason. But they didn't say it's sexual abuse. They didn't say it was sexual abuse. Other states have different ages of consent. Yes, Your Honor. And so if this conduct had happened in some other state, it might not even have been unlawful. Yes, Your Honor. Let's say it's a case, a state where the age of consent is, let's say, 16, 17. Right, Your Honor. And I am wondering about this floating definition of harm or abuse that the BIA adopts, where the very same conduct between potentially the very same two individuals becomes harmful or abusive for federal purposes depending on the physical location of where they do it. Is there some problem with having a federal definition that is inconsistent in that way? Well, I think the federal definition is uniform. It's any conduct involving a minor under the age of 18. Different states may decide not to prosecute those or treat those differently. Let's say it's legal. It's simply legal. So there's no decision on the prosecutor, but there are states where the age of consent is 17 or 16, yes? Right. Even within the circuit, I believe that's the case. Right. So it's not simply the BIA couldn't come along and say, we noticed that you are having sex in state X where this is perfectly legal. We're going to determine that this is abusive sexual conduct and deport you for that reason, could they? No, Your Honor. This requires a conviction, an aggravated felony conviction. So it has to have a conviction. It has to be something that is illegal. And yet the definition of what is harmful then varies with the state. Because if it's not illegal, it doesn't meet the federal definition because it's not harmful. It doesn't meet the federal definition because it's not illegal. If it's not illegal under state law, it's not harmful. Yes, Your Honor. You don't find that troubling or somewhat troubling? It is, but the federal law often recognizes that states have varying definitions. I mean, that's what happened in Taylor, burglary. I mean, the court recognized that different states were interpreting the term burglary differently and that we needed a generic definition. And that's what the board has done here, has given us a generic definition or an interpretation of what would constitute sexual abuse of a minor. It should not be tied to how the most lenient states treat the offender. Why shouldn't we tie it to the federal statute? Why shouldn't we tie it to 18 U.S.C. 2243? Well, they could have, and they certainly looked at that and decided that it wasn't expansive enough. And also 2243... I mean, that's Congress' problem. If that's the way Congress chose to define sexual abuse of a minor, why isn't that the end of it? Well, that was in one area. That was for... That's in the criminal code. I mean, that's when we're talking about the definition of crimes. Yes, Your Honor. But it also, that particular provision only applies to the special maritime and territorial jurisdiction of the United States. So that definition wouldn't even apply. No, but it tells us what Congress thinks sexual abuse is. I'm sorry, Your Honor. It tells us what Congress thinks sexual abuse of a minor is. It does, and it also says it would only be abuse that happened with a child aged 12 to 16, which would also negate anyone under age 12. That's right. That's why the California statute doesn't cut it. It's too broad. It goes beyond what the federal statute can do. The board, in interpreting this undefined and ambiguous term, looked at several federal definitions. There's also the federal definition 3509A, which was the one that they chose that they thought best encompassed congressional intent. And also looking at... That's not about when social workers can be brought into a case. I'm sorry, Your Honor. That's the statute about when social workers can be brought in. It's child victim and child witnesses. Wouldn't the criminal definition be the more pertinent definition? Your Honor, they can, I mean, they're not tied to the federal definition, any federal definition. What they did was look at several. They looked at Black's Law Dictionary definition, and they took what they thought was the most comprehensive definition. And in doing so... I'm at a loss to understand why we would look to Black's Law Dictionary when we can look to the United States Code to tell us what Congress defined as sexual abuse of a minor. Well, in this case, the Immigration Nationality Act does not reference any particular provision of the United States Code, so they weren't required to look at any particular provision. What they did in defining it was look at several provisions, definitions of sexual abuse of a minor. They were not required to follow any of them. They did, I think the board specifically said, you know, we have often looked to federal definitions. They looked to several, and they thought that the definition 3509A was the best capture of what congressional intent was. It also... But they didn't adopt it. I'm sorry, Your Honor. They didn't adopt the standard for 3509A. They said they would use it as a guide. But they also said we're not adopting that test, that statute. They could have adopted it, but they said we're not going to adopt it, but we're going to use it as a guide. That means they're not going to use it always, which is in a case like this. They did use it in this case. No, but they're saying, I'm quoting, we are not adopting this statute as a definitive standard or definition. So why do you say that they did? No, I didn't say that. I said they adopted it as a guide. That was what I meant to say, Your Honor. You started off, though, by saying that it was entitled to Chevron deference. Yes, Your Honor. But they didn't adopt it, a uniform rule here, though. Well, I mean, they came up with a definition or an interpretation based on 3509A, which they will apply in these types of cases. It looks like what they did was a modified categorical approach. And that's what the panel in Afridi seemed to have engaged in, was a modified categorical analysis, because they looked at the underlying conduct in Afridi. I disagree with you, Your Honor. In Afridi, they do mention that the age of the victim was 17, which is relevant because it has to be someone under age 18. The only thing I think that concurrence had a problem with was that they didn't mention that they didn't look at the least culpable behavior of the adult. Afridi Court didn't mention the age of the adult. They just said she was under 17 or she was under 18. They had sexual intercourse. Right, but that's by getting to the facts of the case at all. I'm sorry? The Afridi Court was really engaging in a modified categorical approach by getting into the facts of the first instance. If it's a categorical, you don't even need to go on to analyze the particular facts of the case. I don't agree that it was a modified categorical. I mean, they looked at the statute. They looked at the definition, deferred to the Board's interpretation, applied that to the California statute. Then they looked at the facts of the case. Just that she was 17. And the Board talks about it. They're going to use 3509 in understanding the forms of sexual abuse, where sexual abuse might be applied. And Afridi seems to say, okay. So then they took a look at the facts in the case. I mean, it looks odd to me that it looks like what they really did here was try to look for some guidance or adopt some guidance, and then they applied it. More like a modified categorical analysis. Well, I think even if you disagree with the way Afridi applied it, you can still accept the Board's interpretation and apply that categorically and come out with a finding that the California statute is not overbroad within that definition. I mean, it fits squarely within it. It doesn't cover conduct beyond that. Do you think that Rodriguez-Rodriguez really writes out the abuse component of sexual abuse of a minor? Does it include it, do you mean? No, does it write it out? I mean, it does. It talks about all these things. It does reference, as you say, as a guideline, 3509A. But then it talks about abuse being defined in relevant part as physical or mental maltreatment and seems to say you need, one, an illegal act, and, two, some physical or mental maltreatment. But in applying it to a strict liability statute such as the one in California, there's no requirement of any finding of physical or mental maltreatment, is there? So aren't you writing out that part of Rodriguez-Rodriguez, writing out that part of the abuse part of the statute? I don't think it's writing out the abuse part of the statute. I think the abuse, the physical and mental maltreatment is inherent in the definition that the board chose. I mean, or in the interpretation the board chose. The employment use of a child to engage in sexually explicit conduct or other form of sexual exploitation of children. Sexual exploitation of children inherently involves misuse, maltreatment. I mean, I think what the board was trying to do is keep the Department of Homeland Security attorneys who have to go into court on these cases from having to prove an element of harm or show that the statute actually requires an element of harm, which is something different than in the sentencing guidelines cases where you have, you know, often the sentencing guidelines in the Armed Career Criminal Act cases and the crime and violence cases where you need, you know, an element of force or an element of harm. Well, so when the BIA said, use the words, the phrase physical and mental maltreatment, it didn't mean it? I'm sorry, Your Honor. When the BIA used the phrase physical or mental maltreatment, it was a, it didn't mean it? I believe it did mean it, Your Honor, and I believe that it meant that the definition or interpretation in 3509A encompassed physical and mental maltreatment. What do we do with the California cases that say under the statutory rape provision that someone over the age of 14 who voluntarily engages in sex is not necessarily a victim of sexual abuse? Which case are you talking about? Well, they're cited in footnote 5 to Judge Thomas' concurrence. I assume you read the panel opinion. Yes, Your Honor. And he cites Enrique Kyle F., which itself cites County of San Luis Obispo v. Nathaniel J. Let's assume, and Judge Thomas is usually pretty careful, that those cases stand for exactly that. How does that get into the mix? That if a child under the age of 14. Here's what the footnote says. It should also be noted that California courts charged with interpreting California statutory rape laws have recognized that, quote, a minor over the age of 14 who voluntarily engages in sexual intercourse is not necessarily a victim of sexual abuse. Enrique Kyle, and there's a citation which cites County of San Luis Obispo. Well, I don't think, I mean, I don't think that that means. And do we owe deference to an agency that ignores something like that? I don't think the board is required to. I mean, we're talking about a Federal definition here, not a State definition. And they're looking to how they want to term what sexual abuse of a minor is, not how individual States treat it. So even if a California court were to say that someone over 14 may not necessarily have been a victim of sexual abuse, I still think that the board can say we think it's sexual abuse. No, wait. You see, you don't care what the individual States think? The Federal statute is what matters? No, Your Honor. What the board is trying to do is come up with a Federal definition, which cannot be contingent on how individual States, and especially the most lenient States, decide to treat this. They're trying to come up with one uniform definition that they can apply to convictions that arise under the statute. But in some States, in some sense, they must go with the most lenient State because it's not a crime in the most lenient States. And that is a ratchet that the BIA can't come up with. So if a State has an age of consent of 16, that is, the BIA may think it is, it's not a crime. So that's a new matter. So saying it didn't want to be guided by the least lenient, it doesn't really answer the question. If it adopts a definition that hinges on illegality, it must, of course, be governed by the least lenient State. The most lenient State. Are you saying if a State says that its statute does not constitute sexual abuse, that you would say it does? If California said what Judge Hawkins says, for instance, that certain things that are subject to conviction under the statute do not constitute sexual abuse, you would say that the BIA could say that it does? I think the Board's definition is broad enough that it could still say, yes, we think that in this instance it does. In this instance or that the statute does? Let's say the California statute says here is an offense in which you can be convicted, but it is not an offense of sexual abuse. Well, they didn't coordinate. The cases don't say it's not sexual abuse. It's not necessarily sexual abuse. That's known as a hypothetical. I'm sorry, Your Honor. That's known as a hypothetical. Okay. Well, I so if the State says this is not sexual abuse. Written right in the statute. Did the BIA ignore that? If the petitioner was convicted under a statute that said this is not sexual abuse. The exact same statute we have here, except we're imagining hypothetically that the California legislature had written right into the statute that if it's someone over the age of 14, it's voluntary, there's no force involved, that it doesn't necessarily constitute physical abuse. Could the BIA ignore that? I don't think the BIA would ignore it. I mean, here we have a statute that just says. Now we know the California courts have said that. What's the difference? Well, I think the board here is. What's the difference between it being written in height verba in the statute and the California courts saying the same thing? For the purposes of deferring to the BIA's interpretation. I'm not sure, Your Honor. Didn't we say in Navarro-Lopez in our in-bank opinion that the interpretation by the Supreme Court of California that accessory after the fact was not a crime of moral turpitude was not binding on us for purposes of interpreting what the phrase meant? Yes, Your Honor. At this point, you've lost me. I'm confused. It seems to me one way to do this is to say the BIA can say anything it wants and we have to defer to them. That's a possibility, I suppose. Another way is to say sexual abuse of a minor in Title 8 must mean the same thing that the same phrase means in Title 18. That's 16, age 16. Another way to do it, which has been, I think, consistent with our circuit law, is to say California gets to decide what sexual abuse of a minor. And California has said sex with an individual under 18 where the other person is more than three years older is sex abuse of a minor. And that sounds rational. But then once you look at these two cases from the California Intermediate Court of Appeal, Kyle F. and Nathaniel J., where they say if the person is over 14, then the person is not necessarily a victim of sexual abuse. Then it sounds like you're telling me, well, the phrase doesn't mean what it means in Title 18. And use California law for one thing, but don't use California law for the other. Use California law to decide if it's illegal, but don't use California law to decide if it's abuse. But I don't understand why I'm using California law to decide if it's illegal, if it's not abuse, because the federal statute that we're starting out with says that the aggravated felony that gets a guy deported is sexual abuse of a minor. So if I'm going to use California law, it would seem I have to look at whether California law says it's abuse. Do I have anything left of the argument except Chevron deference? Well, I may have lost some of your question, but I don't think what you meant. I saw three courses here to your result. One is pure deference, what the agency says goes regardless. Another, which would cut the other way, cut against you, is the one that Judge Silverman asked you about. Would the phrase just mean the same thing in Title VIII that it means in 18? Title XVIII, which is age 16. And the third way, which I thought is where we started from and how you won the case initially and what a freedie is based on, is California legislature regards it as sexual abuse of a minor if it's sex with a person under 18 and a person more than three years older than the person they're having sex with. I don't see how we can just take the good parts and not the bad parts, from your point of view, of California law. I don't think that your third proposition, that California ‑‑ I mean, I don't think that it's that California considers it sexual abuse of a minor. Can you talk to us about Kyle F. and Nathaniel J.? Your Honor, other than to say that ‑‑ Let me try to help you out on that one. The quote was a minor over the age of 14 who voluntarily engages in sexual intercourse is not necessarily a victim of sexual abuse. So if the defendant were 15 and the minor is 14, that's not sexual abuse of a minor under California law, right? Yes, Your Honor. Here, California has said where the victim is under 18 and the perpetrator is an adult three years older, so an adult at least 18 years old and three years older, then that is something that they are going to consider to be statutory rape, and that fits within the board's definition of sexual abuse of a minor. Let me ask you another question. The board decision in this case relies quite heavily on Ninth Circuit law. If we were to overturn some of those Ninth Circuit decisions, what would the effect then be on the board decision? If this court overturned Afridi and the others? Mainly Verón Medina, which is cited three times in a couple of paragraphs that analyze the case, and then also Mendoza Uribe. I think, Your Honor, I mean, those cases are also sentencing guidelines type cases, not immigration. I know, but the board relied on those to come to its conclusion. Well, they looked at two things. They said, you know, we believe that under the Rodriguez-Rodriguez definition, this would stand, and also the alternative, looking at the court's definitions, we also, you know, they looked at they had two alternative findings in this case, one that, you know, under Rodriguez-Rodriguez, it would be sexual abuse of a minor, and also under this court's definitions from the sentencing guidelines cases, it would also be sexual abuse of a minor. So I don't think it rests on those other two cases. I think if this court … I think Judge Reinhart's question is if we took an alternate course and said that's not what we meant at all, the board got our case law wrong, then that would seriously undercut the rationale upon which the board presented its decision in this case. I don't think so, Your Honor, because the first rationale was they were deferring to – they were using the Rodriguez-Rodriguez definition. Right. They had two rationales, so you eliminate one, and then you're left with Rodriguez-Rodriguez, and then that may be problematic. I think the board's – I'm sorry, Your Honor. I think the board's definition would be strong – or the board's decision in this case would be strong just based on the Rodriguez-Rodriguez aspect, even if this court were to say you can't follow Barron-Medina and those other cases. He should still defer. What's the present status of this case? I'm sorry, Your Honor? What's the present status of this case? The present status. Where is the appellant? I am not sure, Your Honor. I'm not sure, Your Honor. You don't know? I'm presuming they're in this courtroom, but I'm not sure. All I can say is I don't know how that's relevant to this inquiry. No, but, you know, we're dealing with people, and I'd like to know where they are. Probably in the second room. What did you say? She said probably in the second room. And I think we've had a couple comments about, you know, this was something that parents approved of, and I would just like to say that there are things that parents approve of that aren't necessarily the best thing for their children, which is why California has chosen – But California has the government to worry about people's sexual conduct because their parents don't know. I think California has chosen to protect minors under the age of 18 from this type of conduct. We're not judging California's statute at the moment. We're judging our government, the BIA. And the board has chosen to protect children under 18 here. Because they're better able to do that than their parents. But at the end of the day, are you asking us to defer to a decision in which the BIA explicitly says it's not adopting a standard? How can we defer to a standard that the BIA says it's not adopting? I think that you can – I mean, they've interpreted the term. It's not a – you know, I think when they look at it, they will look at things like the age disparity in the statute, which is what they did in the BFD, that it was a seven-year age disparity in the statute, and they thought that was clearly sexual abuse of a minor, as they've interpreted the term. Here, a three-year age difference is also significant and can clearly constitute sexual abuse of a minor under the board. Can I just ask you one question before you leave? If the worst case for your opponent is that we apply all your deference standards, we think you're right in what the board said. The final question, then, is, is the board's decision reasonable? If it's not reasonable, regardless of all the deference, the position prevails. And is it your position that it's reasonable to say that a 17-year-old girl is automatically harmed when she has sexual intercourse and, therefore, we should deport the father of the child who has custody? That's a reasonable conclusion? Well, I think it's reasonable for the board to determine that when a child under the age of 18 has sex with an adult, that that is sexually, and particularly with this statute that they're looking at. Does it have to be an adult? I'm sorry, Your Honor. Does it have to be an adult? Under 261.5, yes. And you mean under the board's definition? Either one. I thought it was three years older. Under the California statute at issue, it's an adult three years older, someone who's over 18 and three years older. All right. So that if a freshman has sex with a senior, that's a reasonable conclusion? I mean, it would depend. If the senior is an 18-year-old, that's possibly something that, I mean, I think the California statute. Well, it would depend on their SAT score. I mean, here what we're talking about, these aren't peers. You have a minor and an adult, and that's what we're looking at is the conduct of an adult. What they're trying to prevent is an adult from taking advantage of a minor. Could you say again what's wrong with just using the definition from the federal statute, 18 U.S.C. 2243A? Well, I don't think there's anything wrong with it. It's just that the board chose not to use it. They didn't think it was broad enough to cover it, particularly taking a look at all the ways the states define sexual abuse of a minor, which is a myriad of ways. It can be sexual contact. It can be sexual intercourse. It can be sexual, I believe, I mean, they've talked about it in many, many different ways. Unnatural perverted practices, indecent immoral liberties, those types of things. So they wanted something broad to encompass how the states talk about sexual abuse. And that definition, I believe 2243 requires actual contact, and the board in Rodriguez-Rodriguez was looking. I think that was an exposure case, and they wanted to say that exposure, it doesn't require contact. So that was one reason they did not choose that definition. You haven't had the words of the federal statute in front of you. Maybe you could read it to us. 2243? 2243A. Whoever in the special maritime and territorial jurisdiction of the United States or in a federal prison or in any prison institution or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any federal department or agency knowingly engages in a sexual act with a person who has attained the age of 12 but not attained the age of 16 years and is at least four years younger than the person so engaging shall be fined in prison not more than 15 years or both. And the title of the subsection? Sexual abuse of a minor or ward. Sexual abuse of a minor or ward. And that's a minor or ward within the special maritime jurisdiction, so it would include prisons. That's the only place that the United States can punish people for sex is within the United States jurisdiction. Unless I do it, you need to say commas. You're way over your time. I know, Your Honor. I apologize. Well, I think there's time for about a left. Mike Powell to use the last five minutes here. I think Judge Sullivan's right. We need to use the federal definition in this particular case. I mean, the court did that in Rodriguez-Guzman. We're looking at the exactly same term in the sentencing guidelines, which is also sexual abuse of a minor. Now, there was a point made that, well, if they're under 12, it doesn't cover them. No, that's covered in 2241. That's forcible rape if the child's under 12. So it's a whole different statute. And I think to answer the question what difference does it make what standard of review is, is that we have two cases now on the same issue where we have opposite results. The other point I want to make is that you have counsel identify himself for the record. Michael Powell, Your Honor. I think he said Michael Powell. And you're representing you're not on the day sheet. So you're representing Petitioner. Yes, sir. You're not an amicus. No, Your Honor. You're a lawyer for Petitioner. Thank you. Please go ahead. I'm sorry. I think one of Justice Holmes' questions was, well, why do we look to California law, but we don't. I mean, if we have to have a uniform application, we need, and this is what Taylor said, is we need to get one that at least is broad enough to cover all the States, and 34 States do not and the Federal jurisdiction say the age is 16 and under. And is my memory correct, in Navarro-Lopez, we weren't particularly impressed by the interpretation of the California Supreme Court as to whether it was a crime involving moral turpitude or not. No. I mean, but a crime of moral turpitude, you know, here we're actually talking about, really, we're talking about aggravated felonies, and a crime of moral turpitude is not an aggravated felony anyway. I mean, they may have some more leeway in that area, but not in this one, because we're using criminal statutes out on both sides. We need to have the same standard of review. The BIA can make whatever decision they want, but the question is, what does this court do with it when it reviews it? And I think to harmonize these cases so we have consistent results, which is what Leocal said we should do in these cases, is we use the same standard of review in both cases, in both situations, so we don't get inconsistent results where Frady says 261.5, in fact, is an aggravated sexual abuse or sexual abuse of a minor, and then Lopez-Solis and Rodriguez-Guzman say it's not. And Lopez-Solis identified the difference between those outcomes, and that's the standard of review, because they deferred and the other side didn't. If we adopt your position and just take the facts in of Frady, then we wouldn't care that the petitioner was 32 years old and the minor was 17, would we? Well, not at the lower end, Your Honor, because it doesn't matter. I mean, if you're looking at the actual – but if we're doing a Taylor analysis, we're not supposed to look at the facts. We look at the elements of the crime. But the effect essentially would be that if somebody at the age of 32 procured a prostitute for – under the age of 18 for sexual purposes, and that's a crime in California, that would not be sexual abuse of a minor. I don't believe so, Your Honor. Okay. And as I said, in 34 of the States, including the Federal jurisdiction, this isn't a crime. And as Judge Reinhart and Judge Kuczynski said, we're – that's not uniform because we have a distinct minority. There's only seven jurisdictions that it's over 18 in the whole country. So while we're deporting people because of the location of their offense as opposed to applying this across the board uniformly, so we end up having consistent results where they get deported for an aggravated felony. We come back and the court – this court then determines it wasn't an aggravated  Then what? I mean, and it goes the other way. So, I mean, if we need to harmonize this, and this, I think, is the whole point of these dual-purpose statutes, is we need to use the same standard. You said seven States was over 18. Did you mean that? No, no, Your Honor, over 16. There's seven – there's three, I think, that's 18. There's a couple that is 14 – I mean, 17. So there's a few, I think, seven States that go above 16. Okay. And that's the distinct minority. Okay. Thank you. Is there any other question that I can answer for the Court? Thank you. The case is argued. We'll stand some minutes. Roger. Thank you.
judges: Kozinski, Pregerson , Kleinfeld , Hawkins , Thomas , Silverman, Gould , Paez , Tallman , Clifton